WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda H.,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-25-08191-PCT-SHD<br>**ORDER** |

Claimant Brenda H. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying her disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **affirmed**.

## I. BACKGROUND

### A. Factual Overview

Claimant was 61 years old on the alleged disability onset date of May 3, 2022. (Administrative Record ("AR") 211.) She has at least a high school education, (AR 72), and has past relevant work as a home attendant, which is a semiskilled job performed at the medium exertional level as generally performed, and a composite job consisting of cashier II and retail clerk, food, which are semiskilled jobs performed at the light exertional level as generally performed. (AR 30.) On May 12, 2022, Claimant protectively filed a

[1] As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

Title II application for a period of disability and disability insurance benefits. (AR 17.) The claim was initially denied on February 15, 2023, and upon reconsideration on September 7, 2023. (*Id.*) A telephonic hearing was held on September 19, 2024. (*Id.*) The ALJ issued an unfavorable decision on September 27, 2024. (AR 31.) The Appeals Council denied Claimant's request for review on July 22, 2025. (AR 1–3.) Claimant then appealed. (Doc. 1.)

**B. The SSA's Five-Step Evaluation Process**

To qualify for Social Security Disability Insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment." *Id.* § 423(d)(1)(A). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2)(A). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." *Id.* § 404.1572(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC is her ability to perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). Past relevant work is work the claimant has done within the past five years. *Id.* § 404.1565. If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

**C. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Claimant had not engaged in substantial gainful activity since May 3, 2022. (AR 19.)

At Step Two, the ALJ determined that Claimant had severe impairments of nonobstructive coronary artery disease and epilepsy. (*Id.*) With respect to the mental impairments of major depressive disorder and generalized anxiety disorder, the ALJ analyzed the four "paragraph B" criteria and found that Claimant had a mild limitation in (1) understanding, remembering, or applying information, (2) interacting with others, (3)

concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself, and that those impairments therefore were non-severe. (AR 19–20.)

At Step Three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404. (AR 21.)

The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform light work as defined in 20 CFR 404.1567(b) except: [she can] lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; push and/or pull within the weight limits indicated for lifting and carrying; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; [she is] limited to a work environment with moderate noise level, as defined in the *Selected Characteristics of Occupations*; [she must] avoid concentrated exposure to uneven terrain and vibration; and avoid any exposure to hazards, such as heavy moving machinery and unprotected heights.

(AR 21.)

Most importantly for purposes of this appeal, at Step Four, based on the testimony of the vocational expert ("VE"), the ALJ found that Claimant could perform "the past relevant work of home attendant as actually performed, but not as generally performed," after determining that, as actually performed based on Claimant's testimony, this work was at the light exertional level. (AR 30–31.)[2] Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from May 3, 2022, to the date of the decision, (AR 31), and thus did not reach Step Five of the sequential analysis.

## II. LEGAL STANDARD

District courts may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record."

---

[2] The ALJ also discussed Claimant's other past relevant work, which was generally performed at the light exertional level "but actually performed as medium work as described by the claimant." (AR 30.) Presumably, because this other past relevant work was actually performed at the medium exertional level, the ALJ did not find that Claimant could perform it.

*Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Courts must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not a reviewing court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion.").

## III. DISCUSSION

In this case, Claimant challenges only the ALJ's decision at Step Four that she could perform her past relevant work as a home attendant based on her argument that the ALJ erred in finding that this work, as actually performed, was at the light exertional level. (Doc. 7 at 4–8.) As set forth in further detail below, substantial evidence supported the ALJ's findings, and she therefore did not err.

### A. Evaluating Past Relevant Work

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Although claimants bear the burden of proof, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* Specifically, an ALJ must "compare [the RFC] assessment . . . with the physical and mental demands of [the claimant's] past relevant

work." 20 C.F.R. § 404.1520(f). In conducting this analysis, an ALJ must consider whether a claimant can meet the "functional demands of any of their [past relevant work] as they actually performed it or as it is generally performed in the national economy." Social Security Ruling, SSR 24-2p., Titles II and XVI: How We Evaluate Past Relevant Work, 89 Fed. Reg. 48479, 48481, 2024 WL 2846571[3] (June 6, 2024).[4]

When assessing whether a claimant can perform past relevant work as actually performed, ALJs look for "information about the physical and mental demands" of the past relevant work, which "may include detailed information about strength, manipulative ability, mental demands, and other job requirements." *Id.* The specific evidence evaluated includes "the individual's statements as to which past work requirements can no longer be met and the reason(s) for their inability to meet those requirements," "the individual's RFC," and "in some cases, supplementary or corroborative information from other sources on the requirements of the work as actually performed by the individual." *Id.*

In assessing "physical exertion requirements," the pertinent regulation defines medium work as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Light work, however, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* § 404.1567(b). Furthermore, "[e]ven though the weight lifted may be very little, a job is in this [light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

**B. The Evidence and the ALJ's Findings**

In this case, the record is limited both as to the nature of Claimant's work as a home attendant as actually performed, and as to the ALJ's reasons for determining that such work was at the light, rather than medium, exertional level. The prior administrative record at

---

[3] The Commissioner cites SSR 24-2p as being available at "2024 WL 3291790." (Doc. 9 at 3.) No such citation is presently available on Westlaw.

[4] "Social Security Rulings . . . are binding on all components of the Social Security Administration." *Pinto*, 249 F.3d at 844 n.3 (internal quotation marks omitted).

the reconsideration level includes a notation from an individual named Kristin Eshelman stating that Claimant's past relevant work as a home attendant involved a medium level of exertion:

> PRW –
>
> CNA/caregiver jobs – some in homes and some in a facility – give baths, cook/clean house, feed them. medium level exertion described - stand/walk all day - had to lift a lot if helping to give a person a bath.

(AR 77.)

At the hearing, however, Claimant gave testimony that suggested that her work as a home attendant, as actually performed, was at a light exertional level. Specifically, she testified that her work was limited to providing only modest help to her clients, including some assistance when they were bathing because they were largely able to care for themselves:

> Q And what were your responsibilities?
>
> A Basically it's doing their house and making sure they ate, changing the beds, and making sure they got clean, the patient was clean. *They were basically able to do their own – that they were clean* and that they got fed. It was basically they *were able to do for themselves still but they needed help*.

(AR 43–44 (emphases added).) She also confirmed that her work did not require her to lift and carry significant weight:

> Q In that job, how many pounds did you have to lift and carry?
>
> A *I didn't*. Because they were still able to do for themselves. But they weren't able to get out. I did some grocery shopping for them because they wanted me to. And just carry grocery bags then. That was on my own, though. *But maybe five, ten pounds*.

(AR 44 (emphases added).) Finally, after the VE "listened to the claimant's testimony regarding her work history," (AR 52), he requested that the ALJ ask Claimant a follow-up question about her work cleaning houses:

> ALJ: Okay. You did not clean their homes like housekeeping work.

> Correct?
>
> CLMT: Yes, I did partial. Not heavy cleaning. That was just like their bedding. I changed sheets for them if they needed it. They, like I said they weren't to the [point] where they all needed anything major. They were able to do things for themselves but . . . they weren't able to fix their food . . . . So we'd go in and fix their foods and be companions.

(AR 52–53.)

The VE concluded that "[b]ased upon testimony," Claimant's work as a home attendant was "performed at the light exertional level." (AR 54.) He then opined that, based on a hypothetical involving a "light" exertional level where Claimant could "lift and/or carry 20 pounds occasionally and ten pounds frequently," she could perform work as a "home attendant, which was performed at the light exertion level." (AR 56.)

Aside from generically referring to "claimant's vocational background and the opinion of the vocational expert," the ALJ did not explain her finding that Claimant performed her past relevant work as a home attendant "as light work." (AR 30.)

**C. Substantial Evidence Supports the ALJ's Finding**

In this case, the evidence was mixed as to whether Claimant performed her work as a home attendant as light work or medium work. Ms. Eshelman's notation suggested that Claimant "had to lift a lot if helping to give a person a bath," which would support her statement that Claimant's work as a home attendant involved "medium level exertion." (AR 77.) But Claimant testified that her clients could largely do things for themselves, including cleaning themselves with some help. (AR 43–44.) More importantly, she also testified that she only had to lift and carry "five, ten pounds" in the form of "grocery bags," (AR 44), and she did not do "heavy cleaning" and only "changed sheets" because her clients did not need "anything major" and needed someone to "fix their foods and be companions," (AR 52–53).

As the Commissioner correctly notes (Doc. 9 at 4, 6), a claimant's testimony is highly probative on a disputed fact. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (finding a claimant's "own testimony" to be "highly probative" and "reliable

evidence . . . in support of the ALJ's findings"). Applying that principle here, the ALJ reasonably found the VE's opinion persuasive given that it that the VE relied on Claimant's sworn testimony at the hearing. Moreover, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198; *see also Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (quotation omitted)). Substantial evidence supported the ALJ's finding that Claimant's past relevant work was actually performed at a light exertional level, and that she could still perform that work.

Claimant argues that there was an absence of evidence in the record concerning other potential responsibilities that Claimant may have had and that may have reflected work above the light exertional level. (Doc. 7 at 7–8.) This argument is unpersuasive for two reasons. First, there was ample evidence in the record—in the form of Claimant's testimony—that she could lift and carry weight associated with light work, as defined in 20 C.F.R. § 404.1567(b). (AR 43–44.) Likewise, Claimant's testimony that she did not engage in "heavy cleaning," that that her clients did not need "anything major," and that she prepared food and gave companionship, (AR 52–53), provided a basis from which the VE and ALJ inferred that her work involved "a good deal of walking or standing," which is consistent with light work under § 404.1567(b). Second, Claimant was specifically asked to identify her responsibilities, and she described them at the hearing in a manner that supported the VE's opinion, which was adopted by the ALJ. (AR 43–44.) Ultimately, Claimant's testimony provided a sufficient record for the ALJ to conclude that her past relevant work, as performed, required light exertion, and she therefore failed to satisfy her burden of proving that she cannot perform her past relevant work.

## IV. CONCLUSION

Substantial evidence supported the ALJ's finding that Claimant's past relevant work as a home attendant, as actually performed, involved only light exertion. The ALJ therefore did not err in concluding, at Step Four, that she could perform that past relevant work based

on her RFC.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 29th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge